# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

JOHN T. EAGAN,               )
                                 )
        **Plaintiff,**         )
                                 )
     **vs.**                )       **Case No. 4:05CV636MLM**
                                 )
**JO ANNE B. BARNHART,**      )
**Commissioner of Social Security,**  )
        **Defendant.**       )

## MEMORANDUM OPINION

This is an action brought pursuant to Title 42 U.S.C. § 405(g) for judicial review of the final decision of Jo Anne B. Barnhart ("Defendant") denying the application for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq. filed by Plaintiff John T. Eagan ("Plaintiff"). Plaintiff has filed a brief in support of his Complaint. Doc. 10. Defendant has filed a brief in support of her Answer. Doc. 13. The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 8.

### I.
### PROCEDURAL HISTORY

Plaintiff filed an application for benefits on February 19, 2002, alleging a disability onset date of October 1, 2000. Tr. at 66-68. The application was denied.[1] Tr. at 22-23, 40-43. Plaintiff requested a hearing, which was held on June 3, 2003, before Administrative Law Judge James E. Seiler ("ALJ"). Tr. at 425-46. The ALJ determined that Plaintiff was under a disability within the

---

[1]     Missouri is one of several test states participating in modifications to the disability determination procedures which apply in this case. 20 C.F.R. § § 404.906 and 404.966 (2002). These modifications include, among other things, the elimination of the reconsideration step. Id.

meaning of the Act from October 1, 2000, through April 22, 2003, and that he has not been disabled at any time from April 23, 2003. Tr. at 21. On February 25, 2004, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. Tr. at 3-6. As such, the decision of the ALJ stands as the final decision of the Commissioner.

## II.
## TESTIMONY BEFORE THE ALJ

Plaintiff testified that at the time of the hearing he was forty-eight years old; that he went to school through the twelfth grade; that he did not have any additional education; that when he graduated he started work in terrazzo finishing, which is working with marble floors; that terrazzo finishing is the only type of work he had done for the past twenty-five years; that he last worked as a marble floor finisher in August 2000 at which time he sustained a back injury; and that he had not worked in any capacity since that date. Tr. at 429.

Plaintiff further testified that he has had two back surgeries since he injured his back; that vertebra were fused in these surgeries; that he has had physical therapy and injections in his back; that his physical limitations stem from the back injury; and that he does not have any other physical disabilities. Plaintiff said that his back hurts constantly; that at the time of the hearing his symptoms were coming back; that if he stands, sits, or walks too long it becomes worse; that he can sit in one place comfortably for half an hour; that he can stand in one place for five or ten minutes; that his right leg hurts all the time; that his right leg goes numb and gives out on him; that he takes a cane with him so that he does not fall down; that he has fallen; that he can walk a block and then has to turn around and go back home; that he can not bend or stoop; and that if he bends he cannot get up. Tr. at 430-32, 435.

Plaintiff said that after a surgery he had blood clots in his left leg; that he has a damaged valve in his calf; that he takes an aspirin every day; that he also takes Ultracet, Ibuprofen, and Carisoprodol; and that these medications were prescribed by Dr. Chabot, his surgeon. Tr. at 433-34.

In response to being asked if he has difficulty dressing himself Plaintiff stated that, "I can sit on the edge of my bed and get my clothes on. Most of the time I just wear a pair of shorts and houseshoes." Tr. at 436. He further testified that he did not need assistance dressing himself unless he wears tennis shoes that tie. He also testified that he sleeps two or three hours a night; that during a typical day he watches television and reads magazines; that he used to hunt and fish; that he has not hunted or fished since he was injured in August 2000; that he does very little housework; that he tries to vacuum and dust; and that he puts things in the microwave and can prepare a bowl of cereal. Plaintiff further said that he drives to the grocery store approximately once a week and that he occasionally visits his mother. Tr. at 436-39, 441-42.

Plaintiff testified that he can lift ten pounds on an occasional basis; that he cannot lift ten pounds off the floor; that he tries not to lift ten pounds on a frequent basis; that he cannot stand for two hours; that he cannot climb a ladder; that he cannot balance on his right foot; that he probably could balance on his left foot; that he does not think he could stoop, kneel, crouch, and crawl on an occasional basis; and that he could not sustain a forty-hour workweek. Tr. at 440.

Plaintiff further testified that he had received workers compensation benefits and that those benefits had stopped. He also said that at the time of the hearing he had completed physical therapy and was trying to do home exercises; that he did not have any appointments with any doctors; and that he was released by his surgeon. Tr. at 442.

A vocational expert ("VE") testified that Plaintiff's prior work as a terrazzo finisher is classified as heavy and skilled work. The ALJ posed the following hypothetical to the VE and asked

the VE to assume that the individual is of the same age, education, and job experience as Plaintiff: "The individual is limited to lifting mot more than 10 pounds. And the individual cannot do any frequent bending, twisting, or turning. Are there any jobs that such an individual could perform as generally performed within the national economy?" The VE responded, "Yes" and that he would consider jobs such as "an order clerk, assembler, locks or small electrical components, a desk clerk." Tr. at 444. The VE further testified that with the limitations to which Plaintiff testified he was not aware of any jobs that Plaintiff could perform. Tr. at 445.

### III.
### MEDICAL RECORDS BEFORE THE ALJ [2]

On October 18, 2002, Plaintiff presented to orthopedic surgeon, Michael C. Chabot, D.O. Dr. Chabot reported on this date that Plaintiff was a forty-seven year old male who was injured while working as a terrazzo finisher in August 2000; that Plaintiff had a decompressive laminectomy and fusion at L5-6 on January 30, 2001; that Plaintiff reported that following surgery his pain was gone for several months; that follow-up reflected that Plaintiff continued to complain of back pain and stiffness; and that a lumbar myelogram and post-mylogram CT of April 11, 2002 revealed evidence of post-surgical changes at L5-6. Dr. Chabot's notes of October 18, 2002, further reflect that Plaintiff moved about the room without difficulty; that he did not walk with a limp or list; that he did not use an assistive device; that there was "mild" tenderness to palpation of the sacroiliac region; that range of motion testing revealed forward flexion to 70 degrees, extension to 35 degrees, and side bending to 45 degrees on the right and 35 degrees on the left; that he could heel and toe walk, deep tendon reflexes were symmetric; that his lower extremity motor strength was 5+/5+ ; that he had

---

[2]     As the ALJ concluded that Plaintiff was disabled from October 1, 2000, through April 22, 2003, the court will set forth the substance of Plaintiff's medical records during this period to the extent these records are relevant to Plaintiff's condition after April 22, 2003.

decreased sensation involving the right L5 nerve root distribution; that he had no hamstring tightness; and that straight leg raise testing was negative. Dr. Chabot further reported on this date that X-rays of the lumbar spine did not show any evidence of instability. Dr. Chabot opined that there was no clear neural compressive pathology to warrant further surgical exploration and that Plaintiff had a 15 percent permanent partial disability. Dr.Chabot recommended a functional capacity evaluation. Tr. at 221-25.

On November 1, 2002, Plaintiff presented to Ravi Yadava, D.O. Dr. Yadava reported on this date that on a scale of one to ten Plaintiff rated his pain four, at best, and seven, at worst; that he managed without pain medication; that he could sit for one hour at a time, stand for thirty minutes at a time, and could walk for one mile at a time; that he could lift light to medium weights if conveniently positioned; that he could care for himself without extra pain; that pain did not prevent him from sleeping well; that his sex life was "normal" but caused some extra pain ; and that, overall, his satisfaction with life was "good." Dr. Yadava reported on this date that neurologic testing revealed evidence of right L4-5 neuritis. Tr. at 229-30.

Dr. Chabot reported on December 4, 2002, that Plaintiff completed a lumbar epidural steroid injection and reported only short-term relief from the injection. Dr. Chabot further reported that Plaintiff was able to move about the room without significant difficulty; that he did not have a list or a limp; that the lumbar range of motion was "only mildly restricted"; and that the neurologic examination was unchanged. Dr. Chabot released Plaintiff to return to work with limited work duties and no lifting over twenty-five pounds. Tr. at 207.

On December 13, 2002, after reviewing Plaintiff's myelogram and CT scan, Dr. Chabot opined that stenosis at L3-4 and L4-5 was likely contributing to Plaintiff's complaints. Dr. Chabot

recommended that Plaintiff undergo surgery and reported that Plaintiff could work so long as he did not lift over twenty-five pounds. Tr. at 206.

Plaintiff was admitted to Des Peres Hospital on January 22, 2003, for surgery to remove hardware, for a decompressive laminectomy at L3 to L5, for posterior intertransverse fusion at L3-L5, for posterior instrumentation at L3-L5, and for iliac crest bond graft harvest through separate incision. Tr. at 191. On this date, prior to surgery, Dr. Chabot reported that Plaintiff continued to state that he did not use an assistive device for ambulation; that Plaintiff's range of motion testing revealed flexion to 70 degrees, extension 35 degrees, and side bending to 45 degrees on the right and 35 degrees on the left; that Plaintiff was able to heel and toe walk; that his deep tendon reflexes were symmetric; his motor strength was 5+/5+; that he had decreased sensation involving the right L5 nerve root distribution; that there was no hamstring tightness; and that straight leg raise testing was negative. Tr. at 195-96.

On January 25, 2003, Dr. Chabot reported that Plaintiff discharged having tolerated surgery "very" well and that he "convalesced in the anticipated manner over the next several days." Records reflect that Plaintiff was told to increase his activity as tolerated; that he should exercise with common sense and avoid strenuous activity inclusive of bending, lifting, and twisting; and that he could drive within five to seven days if he felt up to it. Tr. at 192.

On January 31, 2003, Dr. Chabot noted that Plaintiff was doing "very well" and was moving about "without difficulty" and that he had no list nor limp. On this date Dr. Chabot recommended that Plaintiff begin physical therapy and advance his home exercises. Tr. at 205.

Records of Pro Rehab reflect that on February 5, 2003, Plaintiff began physical therapy. Tr. at 174.

Physical therapy notes dated April 10, 2003, state that Plaintiff had attended twenty-three physical therapy sessions with four cancellations due to illness; that Plaintiff reported that his back was "doing overall better since starting therapy; that his original pain level was 6 out of 10; that his current pain level was "as low as a 3 and as high as a 5 out of 10"; that Plaintiff stated that his pain was "relatively constant but [was] no longer as sharp as it used to be when he had sacroiliac joint dysfunction." Tr. at 148-49. Physical therapy notes of this date further state that Plaintiff's perceived disability rating was down to 34 % from an initial level of 52 %; that Plaintiff continued to have significant low back pain and limitations in range of motion; and that Plaintiff's pelvis was no longer dysfunctional and his pain level was down. Tr. at 149.

A Functional Capacity Evaluation Pain Questionnaire Pre-Test, dated April 21, 2003, completed by Plaintiff, states that he had pain in the tip of his tailbone; that his whole leg became painful and goes numb; that his whole leg did not give way; and that since his surgery he did not have any spells with very little pain. Tr. at 139. Plaintiff further reported on this questionnaire that his pain was bad, "but I can manage without having to take pain medication"; that he can "take care of himself normally, but it increases [his] pain"; that pain prevented him from walking a half mile, from sitting more than one hour, and from standing more than a half hour; that when he took medication he slept less than six hours; that his social life was normal, "but it increase[d] [his] level of pain"; that his pain restricted his travel over two hours; and that "pain prevent[d] [him] from doing anything but light duties." Tr. at 141.

An industrial rehabilitation evaluation face sheet, dated April 22, 2003, states that Plaintiff had fusion surgery on January 22, 2003; that he had not attempted to return to work since his injury; and that his remaining problem area was that he had pain with sustained standing and sitting. Tr. at 131.

A Functional Capacity Evaluation, dated April 22, 3003, prepared by David Abkemeier, OTR/L, of Pro Rehab, states that Plaintiff demonstrated a work demand level of "medium"; that his required full-duty work demand was "very heavy"; that he had "severe active lumbar ROM limitations"; that he displayed limited material handling tolerances, limited positional tolerances, and limited active lumbar ROM; and that based on these observations he "may be an appropriate candidate for work hardening program on a trial basis." Therapist Abkemeier recommended as follows: "Worker does not meet full duty demands per worker's job description. He appears to be able to work safely in the MEDIUM work demand level on a full-time basis at this time." Tr. at 124 (emphasis in original). The Functional Capacity Evaluation prepared by Therapist Abkemeier further states that Plaintiff was "independent with self-care, cooking/cleaning as needed, short period of driving and shopping"; that Plaintiff did not anticipate returning to his current occupation; and that Plaintiff did not have alternative plans at that time. This evaluation also states that Plaintiff was 5'10" and weighed 205 pounds; that his bending, squatting, crawling, and kneeling were slow and guarded; that his overhead reaching was full; and that he was able to toe and heel walk. Tr. at 125-26.

A physical therapy discharge summary dated May 2, 2003, states that Plaintiff's discharge status was "unchanged" as the "quality of movement patterns remain[ed] unchanged form initial evaluation. Level of activity and/or work is not improved from initial evaluation. Level of Pain remains unchanged. No functional goals were achieved." Tr. at 123.

Thomas F. Musich, M.D., reported on September 19, 2003, that Plaintiff had nerve root blocks in November 2000; that Plaintiff had surgery on January 30, 2001, which included posterior lumbar interbody fusion accompanied by insertion of a prostatic cage, posterior lateral fusion, pedicle screw fixation, and iliac crest bone graft; that Plaintiff had a second major lumbar surgery January 22, 2003, performed by Dr. Chabot; that Dr. Chabot released Plaintiff on April 23, 2003, at which time

Dr. Chabot placed Plaintiff on permanent restrictions of no lifting more than forty-five pounds with limited squatting and bending; and that Plaintiff was presently complaining of constant low back pain and right leg pain accompanied by tingling followed by numbness over the right lateral thigh and occasionally into the right calf. Dr. Musich further reported that his medical opinion was that Plaintiff's work trauma of August 2000 resulted in symptomatic lumbar spinal stenosis, sciatica and degenerative disc disease; that this injury also resulted in chronic neuritis of the right lower extremity resulting in chronic persistent pain and paresthesia; that the work trauma adversely affected Plaintiff's routine activities of daily living and has resulted in permanent restrictions; that Plaintiff had a permanent partial disability of 65% of the man as a whole; and that Plaintiff is totally and permanently disabled as a result of his lumbar pathology, advanced work age, lack of transferable skills, education, and need for ongoing pain medication. Tr. at 397.

On January 15, 2004, James M. England, Jr., reported that he conducted a Vocational Rehabilitation Evaluation of Plaintiff. Vocational Rehabilitation Counselor England reported that Plaintiff needed to get up to move about frequently during the evaluation; that he used a cane for support; that he said he had been using the can on and off for about three years; and that he walked very slowing with a bent forward posture. Counselor England further reported that Plaintiff said that he avoided heights and that vibrations bother his back; that his primary complaint was pain in his low back going to his right leg; that Plaintiff complained of numbness in his right leg if he stands or walks very much; and that Plaintiff denied having trouble with reaching, seeing, grip, talking, hearing, or breathing; that Plaintiff could stand about ten minutes; that he could walk up to about thirty minutes; that he used a gripper to get things off the floor; that he avoids kneeling; that he would not try lifting more than fifteen pounds; that he can sit about fifteen to twenty minutes before his pain level increases; that he does not use a cane every day; that some days he has to use the cane all day; and

that he normally does not drive more than fifteen to twenty minutes. Vocational Counselor England further said that Plaintiff was given a Wide-Range Achievement Test and that his scores were adequate for a variety of employment settings. Vocational Counselor England also said that "it does not appear to me that [Plaintiff] would have any transferrable skills that could be utilized at a light or sedentary level of exertion." He concluded that "assuming only the restrictions described by Dr. Chabot I believe there would still be some types of entry level unskilled work that such a person [as Plaintiff] would be able to perform. Assuming, on the other hand, the recommendations of other doctors it would appear that this gentleman would be limited to less than a full range of even sedentary work." Counselor England concluded based on Dr. Musich's opinion and Plaintiff's description of his daily activities that Plaintiff was permanently and totally disabled. Tr. at 407-409.

On October 26, 2004, Plaintiff was awarded permanent disability benefits from the Missouri Division of Workers' Compensation. Tr. at 411-12.

## V.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. § § 416.920, 404.1529. In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § § 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. § § 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities …" Id. Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the regulations. 20 C.F.R. § § 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one

of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id. Fourth, the impairment must prevent claimant from doing past relevant work. 20 C.F.R. § § 416.920(e), 404.1520(e). The burden rests with the claimant at this fourth step to establish his or her RFC. Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004); Young v. Afpel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will "review [claimants]' residual functional capacity and the physical and mental demands of the work [claimant] [has] done in the past." Id. Fifth, the severe impairment must prevent claimant from doing any other work. 20 C.F.R. § § 416.920(f), 404.1520(f). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person's with the claimant's RFC. Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) (holding that the at Step 5 the burden of production shifts to the Commissioner, although the Commissioner is to required to reestablish the RFC which the claimant must prove at Step 4). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Eichelberger, 390 F.3d at 590-91.

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v.

<u>Barnhart</u>, 294 F.3d 1019, 1022 (8th Cir. 2002). In <u>Bland v. Bowen</u>, 861 F.2d 533 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

<u>Id</u>. at 535. <u>See also</u> <u>Culbertson v. Shalala</u>, 30 F.3d 934, 939 (8th Cir. 1994); <u>Turley v. Sullivan</u>, 939 F.2d 524, 528 (8th Cir. 1991).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. <u>McClees v. Shalala</u>, 2 F.3d 301, 302 (8th Cir. 1994); <u>Murphy v. Sullivan</u>, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. <u>Davis v. Apfel</u>, 239 F.3d 962, 966 (8th Cir. 2001) (citing <u>McKinney v. Apfel</u>, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. <u>Benskin v. Bowen</u>, 830 F.2d 878, 882 (8th Cir. 1987). <u>See also</u> <u>Onstead v. Sullivan</u>, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. <u>Krogmeier</u>, 294 F.3d at 1022 (internal citations omitted). <u>See also</u> <u>Eichelberger</u>, 390 F.3d at 589; <u>Nevland v. Apfel</u>, 204 F.3d 853, 857 (8th Cir. 2000) (quoting <u>Terrell v. Apfel</u>, 147 F.3d 659, 661 (8th Cir. 1998)); <u>Hutsell v. Massanari</u>, 259 F.3d 707, 711 (8th Cir. 2001) (internal citations omitted).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

> (1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Education and Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184 (8th Cir. 1989).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months …." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). The plaintiff has the burden of proving that he has a disabling impairment. 42 U.S.C. § 423(d)(1); Pickner v. Sullivan, 985 F.2d 401, 403 (8th Cir. 1993); Roach v. Sullivan, 758 F. Supp. 1301, 1306 (E.D. Mo. 1991).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

13

> (4) the dosage, effectiveness, and side effects of any medication; and

> (5) the claimant's functional restrictions.

Baker v. Sec'y of Health and Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Id.; Cruse, 867 F.2d at 1186.

# VI.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position. Krogmeier, 294 F.3d at 1022.

Plaintiff contends that the ALJ's decision that he is not disabled as of April 23, 2003, is not supported by substantial evidence. In support of this position Plaintiff argues that the ALJ incorrectly interpreted "a one-time FCE to mean that [he] is capable of working at the medium exertional level on a full time basis." Plaintiff also contends that the ALJ "disregarded the findings of both vocational experts." Plaintiff also notes that he was found permanently and totally disabled and unemployable in the open labor market by the Missouri Workers Compensation system.

"It is the ALJ's function to resolve conflicts among the various treating and examining physicians." Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (internal quotation marks omitted). The opinions and findings of the plaintiff's treating physician are entitled to considerable weight. Indeed, if they are not controverted by substantial medical or other evidence, they are binding.

Cunningham v. Apfel, 222 F.3d 496, 502 (8th Cir. 2000)(citing Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir.1991); Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir.1998)).  However, while the opinion of the treating physician should be given great weight, this is true only if the treating physician's opinion is based on sufficient medical data. Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir. 1985) (citing  Matthews v. Bowen, 879 F.2d 422, 424 (8thCir.1989) (holding that opinions of treating doctors are not conclusive in determining disability status and must be supported by medically acceptable clinical or diagnostic data). Where diagnoses of treating doctors are not supported by medically acceptable clinical and laboratory diagnostic techniques, the court need not accord such diagnoses great weight.  Veal v. Bowen, 833 F.2d 693, 699 (7th Cir. 1987).  An ALJ may "discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000).  "Medical reports of a treating physician are ordinarily entitled to greater weight than the opinion of a consulting physician." Chamberlin, 47 F.3d at 1494 (citing Matthews, 879 F.2d at 424).

Additionally, Social Security Regulation ("SSR") 96-2p states, in its "Explanation of Terms," that it "is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record." 1996 WL 374188, *2 (S.S.A. July 2, 1996).   Additionally, SSR 96-2p clarifies that 20 C.F.R.  § § 404.1527 and 416.927 require that  the ALJ provide "good reasons in the notice of the determination  or decision for the weight given to a treating source's medical opinion(s)."  Id. at *5.

When considering the weight to be given the opinion of a treating doctor, the entire record must be evaluated as a whole. Wilson v. Apfel, 172 F.3d 539, 542 (8th Cir. 1999) (quoting Cruze v.

Chater, 85 F.3d 1320, 1324-25 (8th Cir. 1996) ("Although a treating physician's opinion is generally entitled to substantial weight, such opinion does not automatically control, since the record must be evaluated as a whole.").

The ALJ's duty to develop the record includes the duty to develop the record as to the medical opinion of the claimant's treating physician. Higgens v. Apfel, 136 F. Supp.2d 971, 978 (E.D. Mo. 2001) (citing Brown v. Bowen, 827 F.2d 311, 312 (8th Cir.1987); Brissette v. Heckler, 730 F.2d 548, 549-50 (8th Cir.1984); Thorne v. Califano, 607 F.2d 218, 219-20 (8th Cir.1979). Indeed, the Regulations provide at 20 C.F.R. § 404.1624(c)(3) that "[i]f the evidence is consistent but we do not have sufficient evidence to decide whether you are disabled, or if after weighing the evidence we decide we cannot reach a conclusion about whether you are disabled, we will try to obtain additional evidence under the provisions of §§ 404.1512 and 404.1519 through 404.1519h. We will request additional existing records, *recontact your treating sources* or any other examining sources, ask you to undergo a consultative examination at our expense, or ask you or others for more information." (emphasis added). The Eighth Circuit holds that "'if a treating physician has not issued an opinion which can be adequately related to the [Social Security Act's] disability standard, the ALJ is obligated to address a precise inquiry to the physician so as to clarify the record.'" Vaughn v. Heckler, 741 F.2d 177, 179 (8th Cir. 1984) (quoting Lewis v. Schweiker, 720 F.2d 487, 489 (8th Cir.1983). However, where a treating physician does not express an opinion as to whether a claimant satisfied the Social Security Act's disability listings, the claimant must demonstrate that the opinions of the treating doctors could not "be adequately related to" the disability listings. Id. See also Weiler v. Apfel, 179 F.2d 1107, 1111 (8th Cir. 1999). Where the record contains medical records and opinions of doctors, other than a claimant's treating physician, each of whom evaluated the claimant's limitations, an ALJ need not recontact the claimant's treating doctor. See id. Additionally, "[w]hile

the ALJ has an independent duty to develop the record in a social security disability hearing, the ALJ is not required 'to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped.'" Goff v. Barnhart, Slip Op. 04-3337 (8th Cir., Aug. 31, 2005) (quoting Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004)).

In the matter under consideration the record does not include any report from Dr. Chabot after January 2003, which was month during which Plaintiff underwent surgery, although after that date other health care professionals rendered their opinions regarding Plaintiff's ability to engage in substantial gainful activity. The court notes that Dr. Musich's report of September 2003 does state that Dr. Chabot released Plaintiff on April 23, 2003 and that at this time Dr. Chabot placed Plaintiff on permanent restrictions of not lifting more than forty-five pounds with limited squatting and bending. The record, however, does not include such a report from Dr. Chabot. Indeed, reports of health care professionals other than physicians prepared after January 2003 suggest that Plaintiff can engage in substantial gainful activity; physical therapy notes of April 2003 state that Plaintiff's perceived disability rating was down to 34% from an initial level of 52% and Therapist Abkemeier reported in April 2003 that Plaintiff could engage in medium work. Plaintiff himself reported in April 2003 that he could engage in light duties.

On the other hand, Dr. Musich, who was not Plaintiff's treating doctor and who examined Plaintiff, opined in September 2003 that Plaintiff had a sixty-five percent disability of the man as a whole and that Plaintiff was totally and permanently disabled. Although Dr. Musich stated that Plaintiff was severely restricted from lifting, he did not opine in regard to the weight, if any, which Plaintiff can lift. He also said that Plaintiff cannot stand over ten minutes or sit over thirty minutes. Additionally, Counselor England concluded that Plaintiff was limited from performing the full range of sedentary work. The court further notes that although Therapist Abkemeier reported in April 2003

that Plaintiff could work at the medium level, physical therapy discharge notes of May 2003 are ambiguous in regard to Plaintiff's ability to engage in substantial gainful activity as these notes reference Plaintiff's "initial evaluation" but it is unclear specifically which evaluation is referenced. Despite Dr. Musich's and Counselor England's reports, the ALJ concluded that Plaintiff can lift and carry twenty-five pounds frequently and fifty pounds occasionally, that he can sit, with normal breaks, approximately six hours of an eight-hour work day, and that he can stand/walk with normal breaks. The ALJ furthe concluded that Plaintiff can perform the full range of work at the medium exertional level. The court finds that this conclusion of the ALJ regarding Plaintiff's ability to work as of April 23, 2003, is not supported by substantial evidence as the record currently stands. Under such circumstances, the court finds that this matter should be reversed and remanded. Upon remand, the ALJ should recontact Dr. Chabot to obtain a medical opinion in regard to Plaintiff's ability to engage in substantial gainful activity. In particular, the ALJ should secure a medical opinion which specifically references the amount of weight Plaintiff can lift as well as the length of time he can sit and stand in an eight-hour work day. If for some reason Dr. Chabot is unavailable, the ALJ may obtain the opinion of an examining physician other than Dr. Musich.[3] The ALJ should also be mindful upon remand that

---

[3]    Because the court is reversing and remanding this matter the court need not address other issues raised by Plaintiff. However, in regard to Plaintiff's argument that he should have been found disabled because he was found disabled by the State agency, findings of disability by other agencies, even though they are not binding on an ALJ, are entitled to some weight and must be considered in the ALJ's decision. Michael J. Morrison v. Kenneth Apfel, No. 97-3865MN (8th Circuit, July 17, 1998). See also Wilkins v. Callahan, 127 F.3d 1260, 1262 (10th Cir. 1997); Baca v. Department of Health and Human Services, 5 F.3d 476, 480 (10th Cir. 1993); Fowler v. Califano, 596 F.2d 600, 603 (3d Cir. 1979). As such, the ALJ was not required to find Plaintiff disabled merely because he was found disabled by the Missouri Division of Workers' Compensation.
       Also, in regard to Plaintiff's argument that the ALJ failed to follow the findings of both vocational experts the court notes that to satisfy the Commissioner's burden, the testimony of a vocational expert *may* be used; a vocational expert is required only where a Plaintiff has no non-exertional limitations that substantially limit the ability of Plaintiff to perform substantially gainful activity. Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Robinson v. Sullivan, 956 F.2d

it is possible that Plaintiff can work at the light level as light work is defined by the Regulations as 'involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds." 20 C.F.R. § 416.967(a). Additionally, "[s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251,*6 (SSA).

## VII.
## CONCLUSION

The court finds that this matter should be reversed and remanded to the Commissioner of Social Security for further consideration pursuant to 42 U.S.C. 405(g), sentence 4 regarding the ALJ's determination of Plaintiff's RFC. Upon remand, the ALJ is directed to fully develop the record in a manner consistent with this court's opinion. The court stresses that upon reversing and remanding this matter it does not mean to imply that the Commission should return a finding of "disabled." The court is merely concerned that the Commissioner's final determination, as it presently stands, is not supported by substantial evidence on the record as a whole.

**ACCORDINGLY,**

**IT IS HEREBY ORDERED** that the relief which Plaintiff seeks in his Brief in Support of Complaint is **GRANTED** in part, and **DENIED**, in part. [Doc. 10]

---

836, 839 (8th Cir. 1992). Moreover, an ALJ posing a hypothetical to a vocational expert is not required to include all of a plaintiff's limitations, but only those which he finds credible. Rautio, 862 F.2d at 180; Roberts v. Heckler, 783 F.2d 110, 112 (8th Cir. 1985). Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell, 892 F.2d at 750. In Plaintiff's case, the ALJ did not find that Plaintiff had non-exertional limitations. As such, he was not required to obtain the testimony of a vocational expert.

**IT IS FURTHER ORDERED** that the relief which Defendant seeks in her Brief in Support of Answer is **GRANTED** in part, and **DENIED**, in part. [Doc. 13]

**IT IS FURTHER ORDERED** that a Final Judgment of Reversal and Remand will issue contemporaneously herewith remanding this case to the Commissioner of Social Security for further consideration pursuant to 42 U.S.C. 405(g), sentence 4.

**IT IS FURTHER ORDERED** that upon entry of the Judgment, the appeal period will begin which determines the thirty (30) day period in which a timely application for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, may be filed.

/s/ Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this <u>10th</u> day of  February, 2006.